Mr. Yen, you are going for 4 minutes, Ms. Malesko, am I saying that right? Perfect. Really? Yes. I'm on a roll today. So you're going to go for 4 minutes. We'll then hear from Mr. Johnson, and then we'll hear 2 minutes of rebuttal from Ms. Malesko. Yes. Good. All right. So that's the plan. Let's do it. Good morning. May it please the Court, my name is Sean Yen, and with me here today is Ms. Monica Malesko on behalf of the appellant, Ms. Anjita Garung. I will address the Bremen section argument, and Ms. Malesko will address why the noncontract claims do not arise under the form selection clause. Across both arguments, Ms. Garung seeks to redress the lower court's misapplication of the precedence of this circuit and the Supreme Court. Just before we start, could you just pronounce your client's name? Ms. Anjita Garung. Garung. Garung. All right. Thank you. Under the Supreme Court's framework in Bremen, form selection clauses are presumptively valid, but there is a limit. If, quote, enforcement is shown by the resisting party to be unreasonable under the circumstances. Here Ms. Garung's case involves a unique confluence of circumstances that warrants application of the exception. Otherwise, enforcement will effectively deprive her of her day in court. None of the cases cited by Meadow Quotes or the court below has addressed this unique confluence of circumstances. Meadow Quotes argues that by... What's the unique consequence? That she's poor and an asylee? There's actually multiple. So one is that the specified form is located in a foreign country outside the U.S. on the other side of the world, where proceedings are conventionally in Greek. Well, that was known to her when she executed the agreement, right? It was an agreement, yes. Second is that the form selection clause, though, was not negotiated at arm's length. It was in a form click-wrap agreement in an app. Third, enforcing the form selection clause would effectively deprive Ms. Garung of her pro bono counsel who aren't able to represent her in Cyprus. And despite a diligent search, her pro bono counsel in the U.S. have not been able to find superior counsel willing to take the case on pro bono. I have a question. Wait, wait. I think Judge Walker has a question. I have a question. Do you know if they have a system of counsel being compensated, depending upon the verdict, depending on the outcome of the case? I do not know if there is a contingency fee arrangement in Cyprus. Uh-huh. I mean, that could change things, right? It could. What I would say is that despite reaching out to several superior counsel, none have taken on the case, and some didn't even respond to emails. All right. But it would be your client's burden to show that litigating abroad is unreasonable. And so the fact that the record isn't clear as to whether there are contingency arrangements in Cyprus kind of goes against your client, right? Well, I would say that, at least as to Ms. Garung, just to make clear, that she has lost her life savings. So without any resources to litigate this case in Cyprus, she's unable to afford the cost of litigation that are associated with it. That's not unique, right? That happens a lot, unfortunately, where whether it's through fraud or just through not having any income, people click onto these agreements, agreeing to the forum, and then don't have a lot of money to litigate in a foreign forum. But we've never said that that's enough, right? We've never said that not having the resources to litigate in a foreign forum that you've agreed to is enough to qualify for the exception, right? That would be breaking a lot of new ground for this court, right? Well, that brings me to the fifth aspect of her circumstances, which, as Your Honor had mentioned, she is an asylee. And given her immigration status, traveling outside the U.S. to Cyprus could jeopardize that status. Could, but again, I mean, it seems to me it's the burden on you or your client to show that she can't do this. And it seems to me there's a lot of – it seems very speculative, the way it's been set forth in briefs and in the record. What I would say is that as far as we're aware is that there is no case that's addressed this entire gestalt of circumstances. There is maybe some cases out there that address the form selection clause for the foreign forum. There might be some cases there that address difficulties or financial difficulties. There might be others that also address pro bono counsel. But there hasn't been one that actually hits all of these points. Here's a question. The only thing that in all, in my mind, favored your side of it was tied to the fact of what was foreseeable to her and what wasn't. And I think all of these various points that are being made, possibilities and difficulties, would be foreseeable to a person signing the agreement, except possibly being stripped of one's assets by a scam or being stripped of – being a victim of a scam, which was presumably not foreseeable. If that had been foreseeable and she thought about it, maybe she wouldn't even be in court now. But that's the question I have, was the fact that her poverty was a result of an unforeseeable scam. Was that a – is that enough? I would say that that's one aspect of this. What we're asking the Court here to do is that when the lower court rendered its decision based on Efren, it did a misapplication of Efren to her circumstances. If you look at what the – what the Efren decision has said, it referred to the Efren plaintiff as someone who owned multiple homes, both in Florida, New York, who had just returned from an expensive vacation abroad. Looking at the Efren plaintiff versus Ms. Gurung, they couldn't be further apart. But it's not – I mean, it's not 100 percent clear to me why Ms. Gurung would need to necessarily go to Cyprus to litigate. I mean, people can litigate without leaving their home countries, right? Yes. So, I mean, that is part of it. But, again, there's also essentially that they asked the counsel, and as noted before, her U.S. counsel are unable and not qualified to represent her in Cyprus. And despite a diligent search to date, we haven't been able to find a stipulated counsel willing to take this case on. But it's not clear whether they allow contingent fees. It's not clear whether pro ses can litigate remotely. It's not clear whether or not – I mean, it just seems to me that these are things that – the ambiguities or the lack of specificity here goes against your client because it's your client's burden to show unreasonableness, right? Yes. So the other aspect there is that at least in the Cypriot courts, the typical practice is to require the plaintiff to advance a security. And the reason for that is because Cypriot courts typically require the plaintiffs to bear the cost of the defendants if the plaintiff loses. So that would also cut against contingency fees because there, there is a substantial downside. Well, I think that's true for commercial litigants, but you'd say that's true for even individuals? As far as what we've seen from the public information that's out there. I mean, the problem with your position is – and I understand you're pro bono counsel – but if you're really trying to fit with what I think is a very limited exception, as Judge Sullivan's pointing out, the burden is on you to put in declarations in front of the district court that establish all these different elements, whether it be immigration law, that if she travels there, she's not going to be able to get back for these reasons. Someone – you know, these are things you have in the brief, but they're pretty general on these issues that you're raising about inability to obtain counsel there. Again, is there some structural reason she can't obtain counsel? We don't know. So you're asking us to take a pretty far leap. With respect to Judge Walker's question, if we relied on the fact that if someone is scammed, they get out of the agreement, essentially, would be the argument that, well, it's not foreseeable when you sign one of these things they're going to be scammed, so if you're scammed and you lose your money, then these are unenforceable, which would also be a pretty broad proposition, right? Again, we're not asking for a large, broad-reaching new framework. We're asking to look at the combination of factors. There are cases where the Foreign Selection Clause was domestic within the United States, and then in those instances, for example, Ms. Groom's pro bono counsel could still continue to represent her, despite having to have the litigation occur elsewhere. Here, again, the Foreign Selection Clause is taking us outside the U.S. into a foreign country where the proceedings typically are in the Greek language. And also as to the affidavits. You would agree we've never found this exception to apply because it's a foreign forum and the person doesn't have money to litigate in the foreign forum. We've never said that's sufficient, right? Well, there hasn't been a case, as far as we know, that's covered all these points, and what we're asking is for the district court to properly apply or properly do the work in terms of applying the court's law and applying effort. If I may, Your Honor, I know I'm over time. Well, I have one further question, and that is, what would the – do you happen to know whether Cyprus utilizes remote judging and remote litigation by electronic means? I do not, sir, in terms of Cyprus proceedings, yes. But if I may, Your Honor, just to address your question about affidavits. So at the motion-to-dismiss stage, at least according to New Moon, the well-pleaded allegations in the complaint are to be taken as true and viewed in a light most favorable to the non-moving party, in this case the plaintiff's appellant, Ms. Garone. No, but if you're going to face obstacles in the forum, you could raise that through declarations, right? There was nothing preventing you from putting in a declaration about the circumstances in Cyprus and how that made it impossible or extremely difficult to litigate there, whether it be for some of the reasons we talked about or for some other reasons, right? We're not talking about the allegations of the complaint and what amount of applause we've had. We're talking about establishing that this forum, you know, is so impracticable that we should override what she agreed to, right? Parties put in declarations on those types of things all the time. I've seen them. If there's a war, if there's a war going on and the courts are closed, they'll put in a declaration establishing that the courts aren't available, things like that. What I would say is going back to Bremen, Bremen asked us to look at the circumstances of the party challenging on the enforcement of the form selection clause. So here we're looking at the total constellation of circumstances around Ms. Garone. We're not trying to dissect it down into one piece, another piece or whatnot. We're trying to say look collectively at Ms. Garone's circumstances. All right. Well, we have gone over, as you said, but there is some time in rebuttal that perhaps there will be other points we'll hear from Ms. Malesko on your behalf. But now Ms. Malesko is going to talk about, I guess, the non-contract claims. Is that right? That's right, Your Honor. Good morning, Your Honors. May it please the Court. Monica Malesko on behalf of Plaintiff Appellant Ms. Garone. The law in this circuit is unambiguous. Whether a form selection clause applies depends on what the specific clause at issue says. Here, the form selection clause provided that all disputes arising under the end-user licensing agreement, the EULA, must be litigated in Cyprus. In Phillips v. Audioactive, the Court held that the plain language of arising out of has its ordinary dictionary definition, to originate from the contract. Phillips and its progeny expressly rejected that the arising language encompasses all claims that have some possible relationship with the contract, including claims that may only relate to or arise in connection with the contract. But that is precisely what the District Court did here. The Court expressly conflated the arising under clause with broader form selection clauses, like related to, contrary to the law in this circuit. Virtually all of MetaQuotes' cases, and all of the cases relied on by the District Court, involved broader form selection clauses that mean something different than the form selection clause here. In those cases, the Court sometimes do apply the same operative facts standard. But that is not the standard Phillips and its progeny instructed us to apply in interpreting whether a claim arises under the contract. MetaQuotes certainly could have drafted a broader form selection clause. No, I think we all acknowledge that arising under is the language of the clause. I guess the question is, is why are not these various noncontract claims nonetheless arising under the clause? Because they, in most cases, it seems like the rights that are being asserted are ones defined by the contract. So here, the scam giving rise to Ms. Garung's noncontract claims, as alleged to the complaint, began before and outside the EULA. It begins with MetaQuotes licensing its trading platforms to criminals and making money off of those transactions, all the while knowing that its platform is being used to perpetuate scams against end users like Ms. Garung. The criminals then bonded with Ms. Garung on another platform and persuaded her to download MetaTrader 5. At the scammer's instructions, Ms. Garung was able to select the illegitimate brokers on the app. And these criminals – Again, I think it's worth focusing on what are the specific causes of action and remembering that these are causes of action against MetaQuotes, right? And so that's the focus. To what extent do the claims, the causes of action against MetaQuotes, turn on rights that are defined under the contract? None of Ms. Garung's noncontract claims depend on the interpretation or the enforcement of the EULA. And that's a claim when you look at – They're all accomplished through that contract. If that contract did not exist, none of those things would have happened. It was all through the contract. And we have said, just to give you an example, this isn't the only time, but in a summary order, Abby Beskokas, that that was a form of search that was applied to disputes arising under a contract. And we said it covered security fraud, common law fraud, and negligent misrepresentation claims because all the securities where the fraud happened were purchased through that agreement. And it seems to me we have a similar situation here, right, that none of the fraud would have happened except through that relationship that was established by the contract, right? Two responses, Your Honor. Ms. Garung does not deny that the EULA is an important part of the story. However, but for causation is not synonymous with origination. If you look at the cases in which courts found that a noncontract claims did not arise out of the agreement, you can see there that the contract and the contractual relationship is a critical part of the story. For example, look at Phillips v. Audio Active. The injury there would not have occurred if not for the contractual relationship formed under the recording agreement. There, the musician, the plaintiff, created music in connection with the recording agreement. One album was released under the recording agreement. And they had a dispute as to whether the music, the second set of songs, was actually the subject of that recording agreement or not. But in Phillips, the clause was only a defense to the claims, right? Isn't that a different situation than we have here? No. I would say not, Your Honor, because here with respect to the noncontract claims, MedaQuotes is entitled to raise the EULA in defense, whether it's a limitation of liability or any other arguments they might have under the contract. But the noncontract claims don't depend on the enforcement of the EULA itself. But, I mean, it seems to me that that's not true. Well, some do. Some would, right? I mean, you might have some claims that would be closer to the contract and even require interpretation. But then there might be other claims that are really quite independent of the contract. I mean, to look at it from your perspective, I thought of a hypothetical, which is a rental agreement of a car. And you rent the car. You have the agreement with the car. And then you end up as a result a victim of a tort that you wouldn't have had but for the rental in the sense that you rented the car. But then you had a slip and fall while you were renting. After you rented the car, you walked out and there was grease on the ground and you fell. And so you would bring a suit. And that would be a but-for situation. That would clearly, in my mind, be outside the contract. And it can be analyzed totally without regard to the contract. If it can be analyzed without regard to the contract, that is, there's nothing in the contract. There's nothing that requires interpretation of the contract. Or there's nothing that refers to the contract in the claim. Then it seems to me you might be in a different situation. And that Phillips did separate out those kinds of claims but for a kind of common facts approach, which is applicable really to a broader conception of analysis than the actual ones tied to the more correctly tied to the contract itself. And I don't know. There are a lot of claims here. Which ones I can't specify based on my limited knowledge of the case in that sense in terms of the briefing and so forth. And which claims actually would tie to the contract and which claims could be brought and might have originated, would have originated independently of the contract. That's essentially a broad statement on my part. Maybe you could react to it. Yes, Your Honor. And I believe it is accurate. And the claims, yes, there are several noncontract claims. They do fall admittedly on a spectrum. There is going to be a subset of those claims, and we call them the, quote, unquote, pig butchering enterprise claims, which involves the RICO, the conspiracy to commit fraud, the unjust enrichment, the aiding and abetting conversion, the intentional infliction of emotional distress, that are far outside, a much clearer case. They're far outside the U.S. It seems to me that your fraud claims all turn on statements made in the contract. The fraud is the contract, right? No, Your Honor. Isn't that really what you're saying? The represent, I mean, I'm quoting from the claim. Meta quotes made misrepresentations and omissions of material facts to groom in the agreement. So two points there, Your Honor. One, I would put fraud, and to use Judge Walker's framing, the group of claims that are a little further on the spectrum and a closer call here, and separate from the pig butchering enterprise claims, which are much more clearly solely based on the conspiracy. But turning to the complaint. The New York deceptive practices claim and the false advertising claims, those again turn on statements made in the agreement. And I would put them in their own separate bucket where we are referring to the contract there. But to be clear, Your Honor, what we're doing in the complaint is take fraud as an example. We are referencing the EULA to establish, meta quotes, a scienter, their knowledge of the fact that they are hiding this conspiracy and the deceptive use of this platform from Ms. Garone. But it does not rely on enforcing the terms of the contract, which, for example, is in contrast to this Court's recent decision in Know Your Meme, which involved a failed merger. And all of the claims, including the noncontract claims, revolved around enforcing the merger or trying to recover damages in connection with the failed merger, which is far from the situation that we're faced with here, which is based on a conspiracy. It's not about just enforcement, though. I think Judge Walker used a good phrase when he said, without regard to the contract. And even the ones that you're saying are further afield from the contract are not without regard to the contract. Whatever scheme they formed that you're saying prior to your client signing the licensing agreement is all done with regard to the contract. The contract is the central point of where your client becomes connected to the alleged fraud and all the things. RICO, it's all with regard to the contract. There is no aspect of it. His hypothetical is one where something happened completely independent of the contract. I don't think there's any claim where that could be. It's not a but-for thing. It's just that they're all based in this fraudulent contractual relationship that you're alleging in addition to the contract claim itself, right? We respectfully disagree, Your Honor. The connection does not come only in connection with signing the EULA. The conspiracy in Ms. Perrong getting wrapped up in the conspiracy and the scam predates the EULA, falls outside the scope of the EULA. Ms. Perrong had been targeted by these scam brokers, these criminals, prior to ever. But it's all through the EULA. It may have started before the EULA, but it's all through the EULA, right? No, Your Honor. I wouldn't say that it is through the EULA. And if you look at, and it's helpful to look at the cases in which courts did find that the noncontract claims did not arise out of the agreement, Phillips Automotive or Alvatar v. Sobieski, those are cases in which it's hard to imagine that story being told without reference to the contractual relationship or the contract in some way. In Sobieski, for example, the plaintiff there ended up acquiring or having rights in connection with the company that tied back to the original licensing agreement. It's hard to imagine that story being told and the claims being presented without some sort of reference with regard to the contract. And so to go back to Judge Walker's point, I think it's a matter of whether there's a regard to the contract as a matter of law. If you're proving the elements, the contract might be part of the story, but you don't need to prove or enforce the contract in order to make out the elements of the claim. All right. Well, you reserve. Oh, Judge Walker, you had another question? I do have another question. It seems to me that Phillips does draw distinctions between narrow references to the contract and broader references to the contract and that this is a narrow case. This would fit in the narrow exception arising under. As opposed to language that might be relating to, associated with, or any claim between the parties, that's the broadest you could ever have, I guess, in a EULA. And so those broad ones are separate from what I would see as the narrow one, which is directly tied to the contract arising from the contract or out of the  A term of the contract is relevant to the particular claim. And that to me is, it's important because I think one of the problems in this case is that if you look at our precedents, earlier precedents, pre-Phillips, and also all the district court machinations here, one can easily get confused. And I certainly don't want to cast any aspersions on the district court for finding this field of law to be less than pollutant and try to do our best. But it seems to me that an understanding of what really should be covered by an FSC and what should not be is really what we're all about here. And that's essentially just an expression on my part. But maybe you have any thoughts about that. I do, Your Honor. And we agree. I would argue that at bottom, if we adopt Medecote's interpretation of the case law, it would eviscerate any distinction between arising under and broader clauses like related to. It would mean that virtually any claim between parties that share any sort of contract with any forum selection clause would fall within the scope of that clause. And that is inconsistent with the plain language of the contract, and it is inconsistent with this circuit's binding precedent. All right. And it's also a function of who actually is responsible for drafting the clause. And here, that's Medecote, it seems to me. Certainly, anybody drafting a clause can make it broad if they wish. Assuming that my analysis about it being narrow is viable, they could have expanded it. They could have said and relating to. And there is a case that talks about arising under or relating to. And that is a very broad concept. Exactly, Your Honor. And in this case, when you look at the EULA, which, again, is a contract of adhesion that Ms. Gerung simply had to click her acknowledgment, and it hyperlinked the EULA, here you actually do see other portions of the EULA outside the forum selection clause in which Medecote did choose to use language such as related to or in connection  But for the EULA, they were, for the forum selection clause, they were intentionally narrow. And we would argue that that should have meaning, and it is a narrower meaning that should be given enforcement here. All right. We will hear back from you, Ms. Galeshko, in a couple minutes. Thank you, Your Honor. We will hear from Mr. Johnson for the appellee. Thank you, Your Honor. May it please the Court. Tom Johnson appearing for appellee, Medecote. The district court correctly concluded that the forum selection clause in the party's agreement or EULA was enforceable and applied to all claims in the plaintiff's  As the Supreme Court and this Court have repeatedly held, foreign forum selection clauses are presumptively valid and vindicate important interests in providing certainty to parties with customers all over the globe and promoting international comity. Judge Walker, you asked a question about whether it was reasonably foreseeable that the plaintiff would have agreed to this provision. Both parties are proceeding from the assumption that this is a presumptively valid clause, that is, that the Prima Facie case has been made, that the clause is enforceable. There is an element of the test as to whether the plaintiff, whether the clause was reasonably communicated to the plaintiff. They are not making that argument here. You're now talking about the Berman test. Is that correct? Yes, right now I'm talking about the first issue as to the application agreement.  And, you know, I mean, as we say in our papers, Your Honor, the test, as this Court, I think, has acknowledged in its questions, is very narrow. It's never been found satisfied. The test is for whether, for all practical purposes, a plaintiff will be deprived of its day in court. This Court in Efron has indicated that the kinds of considerations that the plaintiff is arguing here, financial hardship and travel restrictions, are not relevant to that analysis. What you're looking for is some indication that the foreign forum might be biased, that it might be closed to the claims, that it might not hear the claims and no remedy might be available. She is not making any of those arguments, Your Honor. So we would say as a categorical matter that those are impermissible considerations. But I think some of the Court's questions also showed that she is not even assuming that there was some relevance to those, that she has not met her heavy burden of demonstrating that that narrow exception. Should this be a categorical approach, or should we look at the individual circumstances in each particular case? From our perspective, it should be categorical, Your Honor. I mean, this Court in Stackey said that, you know, despite the fact that many victims or alleged victims are sympathetic, you are not going to go down the road of creating special rules. I think the fact that, you know, their reply brief in one place states a three-factor test, in another place states a five-factor test, it illustrates the challenge of drawing a judicially administrable rule to account for these various circumstances, and to do so and to invite further challenges like this would undermine the certainty that companies like MediQuotes get out of foreign forum selection clauses, where they're domiciled in Cyprus and they've got users from all over the world. You know, the Supreme Court has crossed this Rubicon and said they're entitled to have, as a clearinghouse, a single jurisdiction in order to hear all of these different claims. I did want to address just quickly my friend on the other side's reliance on New Moon and the back-and-forth with Judge Bianco on whether they could have put or should have put affidavits in. I certainly think that in a forum nonconvenience analysis, the Court is competent to look at declarations and affidavits, and especially where they bear the burden, they should have been able to show that there was some special problem with litigating these claims in Cypriot courts. They haven't done that. Now, even if all you look at is the allegations in the complaint, Your Honor, these representations about inability to find Cypriot counsel, these representations about what the fee-shifting structure might look like, her inability to travel or litigate, her current financial circumstances, none of that's in the face of the complaint. These are representations being made by counsel in their briefs. The claims simply indicate what she believes she lost in the alleged scam. But these additional representations as to why Breedman, in her view, should apply do not appear. So even on a test that, you know, we don't think is applicable, but if you take New Moon to say that you look at the allegations in the light most favorable to her, she doesn't have allegations that are satisfying all these questions that the Court is asking about how the system works. I mean, one last point on that. Stackey also says, I mean, this Court also says, the fact that a foreign tribunal, for example, does not follow the American rule on fee-shifting or the remedies might not be exactly the same, that, too, is not something that would justify invalidating a foreign forum selection clause. Again, because she's not challenging it, wasn't reasonably communicated, that's something that you can assume at the outset is going to be different when you're litigating abroad. So if the Court has no other further questions on that, I'm happy to move to the second issue. So the forum selection clause's language covering any action or proceeding arising under this agreement is broad enough to include all of plaintiff's claims here. This is an action that includes a breach of contract claim under the EULA, and she alleges in paragraph 14 of her complaint that her State law claims, quote, arise out of the same facts as the Federal law claim. Now, we acknowledge that not the common facts are not necessarily the test, are they? If you have a narrow clause, if it's you're saying arising under the agreement, then why is, if you've got a common fact that is a broader situation that can exist independently of a contract, then why wouldn't that be outside of the agreement? Right. So it's certainly not, you know, Your Honor, it's certainly not just any fact held in common. Right. We acknowledge that, you know, under the sports decision in Phillips, it said that minimum, you know, a case where the agreement enters into by way of defense in a case only by way of defense does not arise out of the action or proceeding that the plaintiff brings. But the test that Phillips articulates, it says indicates a causal connection. The other way that Phillips put it is it's more than incidental. What you're looking at is the substance of the claim and not the label. You're looking, is there a substantial factual relationship? And I think to your point, Judge Walker, certainly this Court's precedents have articulated that test in different ways. Well, Phillips talks about the plaintiff's rights originating from the contract, right? It talks about that, Your Honor, and then it says, and it indicates a causal connection. So then when the Court is actually applying that test to the facts there, yes, what the Court says is, look, we're not going to require a plaintiff to be clairvoyant as to what defenses a defendant might potentially bring. Those defenses do not arise out of the claims that the plaintiff is bringing. In other words, it's sort of an argument that, look, the plaintiff is the master of her complaint. If she's not putting the agreement at issue, we're not going to find this narrower clause, Judge Walker, to be applicable. But here the plaintiff has pleaded a breach of contract claim. And as my friend on the other side said, it's, quote, an important part of the story. I mean, I think that's a fatal concession, Your Honor, because what we're looking for is, is it incidental? It's not merely incidental. Is it – is there a causal connection? Judge Bianco, as your questions indicated, there is a causal connection here. It's not just whether some conduct – Well, you've said that – in your brief, you refer very often to some of these of the ULA, by virtue of the fact that this case could not be – would never have happened but for the ULA. But that's a but-for test. That's my hypothetical in the – seems to me in the car dealership. There could be claims that would be brought that do not depend upon any of the terms of the ULA and do not refer to a contract. Yes. So, Judge Walker, I mean, as I was preparing for this argument, I thought of the exact or a very similar hypothetical. What about a slip-and-fall claim, right? So something that has absolutely nothing to do with the agreement. Perhaps there's some but-for causality in that, you know, if, you know, they had never met or whatever, you know, they wouldn't have – you know, a slip-and-fall wouldn't have occurred. And there's certainly district court cases here where a court says, well, it's just way too attenuated, this relationship between the contract and the claims. So I agree, Judge Walker. I mean, you could write this opinion to say that this is a spectrum and some claims would fall outside. But I'm happy to explain now why I think that's not – Well, why would you want to write an opinion that's more expressed about the – takes into account the language of the clause and the facts in question and looks at cases – at the clause and pays a lot of attention to the language of the clause, which is in the purview of, in this case, your client, arising under. Not arising under or related to. Not associated with. Not any claim between the parties. You know, anything broader language like that, which would be, in my view, quite different. Right, Your Honor. Let me now explain, you know, sort of looking at the allegations in the complaint and the claims. Well, I think this isn't just an attenuated causal relationship. I think it's proximately caused. I think it's within the scope of the agreement. The agreement is very broad. The agreement itself governs the entire relationship between these parties. It was at the – it was the reason why these parties have any relationship at all. As she pleads in the complaint, right at the outset of this agreement, metaquotes states that it does not have any response. It does not engage in trading operations. It has no responsibility for trading operations. They later say we don't have any relationship with these third-party brokers. We don't accept any commissions from these third-party brokers. We're not warrantying any of their products or services. If you use third-party applications or software, you do so at your peril. So all of these representations, these potential relationships with third parties, are within this agreement. It says nothing about slip and fall, so we can put that to one side. But then everything about – everything in her torts or statutory claims follow from that, Your Honor. In her fraud claims – Statutory claims follow that from that in the sense that the plaintiff wanted to plead as much as possible. But those claims originate with a statute, right? I mean, they are dependent upon the statute much more than any contract. I'm not saying the contract isn't in the picture through a lot of these, but some of these claims are, it seems to me, independent of the contract. You know, and gross negligence would be one. You know, that kind of thing. That's a tort. And it may or may not depend – you know, the contract was in place, and you seem to say that in your brief that as soon as you have a contract like this in place, that is a sufficient basis for denying a foreign selection clause – for enforcing the foreign selection clause. And that is a question of mine. I can't take this. And that is – that's a different situation. So, you know, what the claim really – looking at the core claim and where it originates seems to me a pretty good way of examining this. Not all the cases have done that. I agree. The case is muddled. Yeah. So, Your Honor, I don't think I'm disagreeing with you that, you know, we ought to be looking at this claim by claim and very specifically. So, I mean, a couple of responses to what you said. First of all, I don't think it's just does the right originate in a statute or is it a tort. I think Phillips rejects that. They said you can't plead around a foreign selection clause by framing something as a tort or a statutory claim. That's why it goes on to say what matters is the substance. There's even statute to get around it. But suppose you hadn't brought – you hadn't brought a breach of contract. You just brought a statutory claim. You know, could you still – could you still be arguing this? I mean, you know, and other – that statutory claim is really an independent claim depending upon the legislature's will, right, in New York or wherever. Well, the plaintiff could have – you know, might have been able to file a complaint that didn't put the EULA front and center. I mean, she didn't do that here. So let me just address two of the claims you've mentioned, Your Honor. So gross negligence. Her theory on those claims is failure to warn. We didn't adequately warn her of the risks of using the app to trade. But, in fact, if you look throughout the EULA, which she placed an issue – I mean, we indicated to her that we weren't warranting third-party software applications. The whole – you know, whether or not we satisfied that duty to warn starts with whether we did so at the EULA. That's where the parties' relationship began. So, again, there's a causal connection, factual interdependence. It's not whether there's some hypothetical, you know, set of facts that doesn't mention the EULA. The EULA, as she said, as my friend on the other side said, is an important part of the story. It's part of this complaint. Now, with respect to RICO, Your Honor, which I think is – Well, it's an important part of the story in the sense that you couldn't – that they couldn't bring a claim without having entered into the EULA and gotten the ability to – or been eventually ending up with the particular brokerage outfit that dealt with that. But why isn't that just a but-for causation? So it's not just but-for cause, Your Honor, because the crux of the RICO claim is that there's a conspiracy between meta quotes and these brokers where they secretly have – they're aware that the app's being used for fraud. They secretly have a relationship that's commission-based, and these representations in the EULA are in furtherance of that conspiracy because we were saying the opposite. It's hard for me to imagine that if we got into discovery in this case, that whether those representations in the EULA are accurate or not wouldn't be front and center or that they wouldn't be arguing that that is a predicate act of wire fraud, that the EULA – That might be true, and I think that the RICO claim is vulnerable on lots of other grounds as well. But I'm just – I'm looking at all the various claims to see whether – the extent to which they are related to or associated with the contract without arising under it. And I think, you know, again, I think we do satisfy that claim-by-claim analysis, Your Honor. The other thing I would say, and Judge Bianco brought it up, is that I think, you know, the Abbey case is very similar to ours, right? I mean, the Abbey case and Robey was one as well. The Court did look to causation. The Court looked and said, you could not underwrite risk without entering into this agreement. You could not sell securities in Abbey without entering into this agreement. The Court said that was sufficient. I mean, that is how the Court has made sense of this case law, that if the agreement comes into the complaint by plaintiff's case in chief, if substantially there's that factual interdependence in the claims, there's that causal relationship, then it's covered. Phillips is a case in which, you know, the songs at issue, they were outside of the scope of the recording agreement. There was ten songs that were within the scope. Then he recorded another 15 songs. Those were outside the scope of the agreement. The agreement only came in via defense. We're not going to, you know, require a plaintiff to be clairvoyant about what sort of defenses a defendant would raise. So that makes sense on its own terms. But this is a very different agreement in which the plaintiff has put the EULA front and center. Unless there are further questions, Your Honor. No. Thank you, Mr. Johnson. We'll now hear from Ms. Valesko for two minutes of rebuttal. Thank you, Your Honors. Just briefly, on the Bremen exception, Judge Walker had asked about whether this should be a categorical exception. And our position is that it should not be. And we think that's clear under the language of Bremen itself, as well as cases applying Bremen. Bremen specifically refers to the circumstances. We also see the circumstances of the plaintiff, which is what we're being asked to analyze here. If not this case, then which case? There has to be a limit. This case is that limit. We haven't seen this collection of circumstances in any of the other cases. But again, there's no record here that says she can't litigate remotely, that she can't forget a contingent fee arrangement with a firm in Cyprus. They were guessing about whether she would be not able to return to the United States if she leaves. None of this has been developed, right? Your Honor, in that case, we would ask that the court vacate and remand for those factual findings. You're asking us to say that the district court erred because you didn't put in sufficient record evidence from which the court could have concluded it was an unenforceable foreign selection clause. We're arguing that the court erred how it considered the factual allegations and applied the Bremen exception. We believe that there is enough in the factual allegations. But it's your burden to show that it would be unreasonable, which is often, I guess, construed as impossible, to litigate in Cyprus. And it would be practically impossible in this case. Well, I mean, if there are contingent fee arrangements, given the amount of loss here, it doesn't seem to me it would be that impossible to get a firm or a lawyer to represent her. If she's able to litigate remotely pro bono, excuse me, per se from the United States, it's not clear to me then that that would be impossible to litigate in Cyprus. No one is saying that Cyprus is utterly corrupt or a place where you can't litigate, right? No, no, Your Honor. We're not saying that. And we have done our due diligence to try to have someone pick up Ms. Gurung's case in Cyprus and have not been successful, regardless of whether it might be contingent fee or other assessments of the case. We do understand that there is a potential penalty in the event that she loses. And that's a risk that she can't take. She doesn't have the means and the funds to pay for that. And then just briefly, Your Honor, on arising under. What I think you see in the case law is courts sometimes recasting the origination inquiry in terms of a contractual or business relationship when it makes sense for the facts of that case, such as in Know Your Me. But that recasting doesn't make sense for all facts. This case is more like Phillips v. AudioActive against Sobieski. In Phillips, the plaintiff's copyrights existed because of his authorship, not because of the recorded contract. Even though the entire dispute was situated within and made possible by the contractual relationship, the recording company had the music because of the recorded contract. And this is directly analogous to Ms. Gurung's situation. While her relationship with MetaQuotes is rooted in the EULA and her use of the app, her RICO and tort claims assert rights originating under federal and state law, not under the EULA itself, that allow her, as a victim of this scam, to bring these claims. To adopt MetaQuotes' interpretation of Know Your Me and other cases would effectively mean that Know Your Me silently overturned Phillips by rewriting the standards under which the courts analyzed. Give me an example of a misrepresentation that MetaQuotes made to your client that would not be based in the contract. Give me an example of something they told her that you would say that was fraudulent or grossly negligent. Give me an example of something. What would it be? I mean, the ones that I see in here, and you can correct me if I'm wrong, like that they didn't tell her that there was commissions, they were earning commissions. That's a concealment based upon the contract, right? That they didn't tell her in the contract that that was going on. So give me one example of something they represented to her that wouldn't be based in the contract itself. The legitimacy of the brokers. Ms. Gurung was only allowed, only able to connect with the brokers because they were available on the MetaTrader app as if they were legitimate. She was able to, from a drop-down menu, identify those brokers and connect with them. That's outside of MetaQuotes. So is it an affirmative obligation, independent of a contract, to talk about the legitimacy of the brokers? Or where is that arising from? Or to not list criminals as potential trading partners on platforms. Yes, Your Honor. But that they... To not facilitate a criminal scheme to deprive end users of their funds. Okay. But that, again, that is a duty that is derived from the contract, right? No, Your Honor. They would have no obligation to your client if she weren't their user, right? That duty doesn't arise from the contract. Again, I think we're conflating the fact that the contract is a part of the story, even though it doesn't give rise to the rights for her as a victim to bring her claims pursuant to other federal and state laws. But, well, it's whether it arises under the contract. You're arguing that the contract is the scheme, right? The contract is a part of the story, and it is a part of the scheme. But it is not what gives rise to her claims. And if you look at other cases, including this Court's case in Alvatar v. Sobieski, or district court cases involving conspiracy-based claims like Admar v. Curinex, Allianz v. Bank of America, Rio Tinto, in all of those cases, you can see this tension playing out, and the Court's finding that regardless of the fact that there is a contract, a contractual relationship that is part of the story, the rights that are being asserted and the causes of action don't actually arise out of that contract. So I would urge the Court to look at those cases in considering how to reconcile. But there were no rights at all and no duties at all other than if there were no contract, right? No, Your Honor. We wouldn't take that position. So I just want to be clear with this. Meta quotes could be liable for the bad conduct of brokers even if she hadn't signed an agreement with them. That gets a but-for causation, which is not the origination standard. I'm not sure I agree with that, but I want to make sure I understand your position. Your position is that, yes, the meta quotes could be on the hook for a RICO or for some other of the claims that you asserted, independent of there being a contract at all? No. The story here involves the contract, and the meta quotes, the MetaTrader app, was part of the way in which Ms. Garung was injured. But her rights that give rise to the noncontract causes of action don't originate in the contract. So, again, there is this distinction. We do not think that the origination standard is the same as but-for causation. And by meta quotes, that's what you're saying, right? By having – it seems to me for most of these causes of action, what you're saying is that the rights and the duties that she enjoys are because once they've entered into an agreement, they have to make disclosure and they have to do other things that are going to be honest, right? For example, in a RICO conspiracy, there's no requirement for the contract. There doesn't – none of the elements require that there be some sort of enforceable contract. Here, there happens to be a contract that is – I agree with that. But here, but for this contract, they're not even in the story, right? And, again, our position is that but-for causation is not the equivalent of the origination standard. And I think you see that very clearly in Phillips itself. It is hard to imagine that the recording company would have had access to the music but for the recording contract. So to say that the but-for causation – that the but-for is the same as the origination standard would run contrary to Phillips. Essentially, what you're arguing, I guess, is that a rising under has a narrow conception that's different from relating to or somehow any business that is tied to the contract or any claim that could be – into which the contract is part of the picture, which would be covered – it would be covered if it was related to or if it was associated with the contract. But – and they could have written that language in. But a rising under means you're interpreting terms. Are you not of a contract or referring directly to the contract in the non-contract claim? Exactly, Your Honor. We would agree with that 100 percent. And that's why we think that – So that's really the important thing, I think, to think about in this case. Are there – is there a convenient way of looking at these various clauses that are used from time to time to determine how broad or how narrow they are based upon their language with the burden on the author of the language? Yes, Your Honor. We absolutely agree with that. And we do think that, you know, to adopt the interpretation that but-for causation is the equivalent of the origination standard would essentially be rewriting Phillips and the application of Phillips in other cases, including Albatar v. Sobieski and the district court cases that I had mentioned. All right. Well, we will – we've got our money's worth, so thank you, Boa, overall for arguing. We will reserve decision.